Speak, J.
The ground of complaint on the part of the plaintiff is that the conditions imposed upon her are unjust and oppressive, and that the court was without authority to require her acceptance of them as a condition to her recovery of alimony. On the other hand it is contended that the court, having the proper parties before it, and having the general power to allow alimony, had also full power to adjust all their property rights.
i It is apparent that the circuit court proceeded upon the assumption that it possessed full equity} powers, and might properly take cognizance of all the property, and interests in property, possessed by each of the parties, and make as full and final a decree and order as though the cause were strictly one in equity. v And there is some support for this assumption to be found in one of the recent text books, and in a paragraph of an opinion in this court. We refer to the *343 comprehensive and able treatise of Mr. Nelson, of the Nebraska bar, on the Law of Divorce and Adjustment of Property Rights. At page 858 of the second volume, the author observes: “We have seen that the decree for a permanent allowance is a final adjudication of all property rights between the parties. After such decree neither party has any claim upon the other of any kind. The parties have, in the proper tribunal, and at an appropriate time, had an opportunity to litigate their property rights, and the decree is presumed to be an adjudication of all matters which might have been tried in such action. It follows that, in ascertaining the proper amount for the wife, all her claims against the husband must be considered.” Expression of the same idea is found in other parts of the work. The decision in this court referred to is that of Petersine v. Thomas, 28 Ohio St., 596, cited by counsel, opinion by Ashburn, J. He remarks: “Under our statute, a divorce contemplates a final separation of the parties. Their paths in life henceforth diverge, and, in legal contemplation, they are to each other as strangers. When not otherwise provided, we think the statute contemplates that, at the time of decreeing the divorce, the court will adjust all the pecuniary rights of the parties in relation to each other springing out of the marital relation about to be forever annulled. To this end the court is given full discretionary authority to make such order concerning the division of the property and support of the children as to the court shall appear, under all the facts and circumstances, just, equitable, and reasonable.” Exactly what meaning should be attached to the phrase “all the pecuniary rights of the parties in relation to each other springing out of the marital relation,” is not clear. But, assuming that it is *344 meant to include all rights of property of every kind acquired by either or both before and during coverture, it is proper to say that the case before the court did not involve so wide a scope of inquiry. The question presented, and the judgment upon it, is clearly set out in the second paragraph of the syllabus as follows : “After a suit for divorce and alimony has been finally determined by the court granting the divorce,, and in lieu of alimony confirming an executed agreement as to the amount paid as alimony, a new action for additional alimony cannot be maintained when the reasons for such additional allowance existed or might have been provided for in such final judgment,, and when it is not sought to impeach such final judgment.” 'It is apparent that the court was dealing with the effect of an executed agreement of the parties, and that its decision did not call for an expression upon the phase of the general subject quoted from the opinion of the learned judge. Attention is. also called to the recent case of Julier v. Julier, 62 Ohio St., 90. But that case, also, deals with the effect of an agreement of the parties which the court finds to be just and reasonable, and aids but little, if any, in determining the question here presented; and we are' not cognizant of any reported case in Ohio which, in the decision upon the point at issue, gives authoritative support to the circuit court’s assumption.
We gather from a somewhat extended examination, of authorities that, in so far as we derive any common law rules respecting divorce and alimony from the-mother country, we inherited those administered in the Ecclesiastical courts, for, outside of parliament, no other tribunal had or assumed cognizance of such controversies. Such power did not, in England, belong to a court of equity. The Ecclesiastical court. *345 was not, and never had been, a court of equity. It was a canonical court, and never deviated from the canon law. MacQueen on Divorce, 55, note; Slielford on Marriage and Divorce, Law Library, 377, 598, 599. Bee also Adams’ Equity, 17. Mr. Henry Folsom Page, in his valuable work on Divorce, 297, states that: “It is now settled in England that' courts of equity have no general authority to decree alimony to the wife.” 'Mr. Browning, in his work on Marriage and Divorce, speaking of the jurisdiction of the courts of England at the present time, at page 1, observes: “The court for divorce and matrimonial causes owes its jurisdiction — in part original and in part derived from Ecclesiastical courts — to the act of parliament by which it was created, and the several amending acts by which that jurisdiction has been in various ways altered and amplified.”
The state of Ne law in this country on that phase of the question is probably more in doubt. Mr. Page expresses the opinion “that, in the United States, courts of chancery exercise jurisdiction to decree the allowance of alimony in cases of cruel usage or desertion, and this jurisdiction is placed on the ground that the wife has no remedy at law.” Decisions of the courts of South Carolina, North Carolina, Virginia, Kentucky and Maryland, support the view above stated, but the author cites no Ohio case sustaining the text. Story Eq. Juris. (2), section. 1423», says the doctrine that courts of equity should have power to adjudicate claims of deserted wives to reasonable support out of the husband’s estate is on the ground that there is no adequate remedy at law, but doubts that it can be said to be an established doctrine in this country. On the other hand, Mr. Bishop, in his work on Marriage and Divorce, vol. 1, section *346 114, gives this as the law: “Of the several branches of the unwritten law of England, there is one, properly to be deemed common law, yet technically called ecclesiastical law; another, technically, the common law; another, the law of admiralty; and another of very great importance, is known as equity. To the branch of the common law called ecclesiastical the subject of marriage and divorce, in England, pertains.” The same author, speaking of the assumption by some of our courts of equity of jurisdiction of the subject because of the absence in this country of ecclesiastical courts, observes, section 1393: “Wisely and well our judiciary has uniformly decided, after thinking, that the mere non-existence of ecclesiastical courts with us does not empower our equity tribunals to take up and exercise their divorce jurisdiction.” The trend of the author’s entire remarks upon the subject indicates clearly that iñ his judgment, courts of equity, in this country, have not general and full equity jurisdiction in matters of alimony. In volume 2, Am. & Eng. Ency. of Law, 93, under the head of Alimony, article by Mr. Edmund Randolph Williams, it is stated unreservedly that: “The jurisdiction of chancery courts, as organized under the commonwealth, did not become a part of the law of the colonies, and so could not be exercised by them on this ground. And in the United States at present it is maintained, by the apparent weight of authority, that, in the absence of legislation to the contrary, alimony should not be allowed in an independent suit in courts of equity.” Decisions from fourteen states of the Union are cited as supporting the text. Professor Pomeroy, Eq. Juris., volume 1, section 171, speaking of remedies in courts of equity, remarks: “A fifth class contains certain special remedies which do not *347 belong to the original jurisdiction of chancery, but are wholly the results ©f statutory legislation,” * * * among them “suits for divorce, absolute and limited, and for alimony in many of the states.” Again, volume 2, section 1120, the same author observes: “Under the judicial system originally prevailing in England, it was granted and regulated solely by the Ecclesiastical courts which had exclusive jurisdiction of divorce. It is very clear that the original jurisdiction of equity did not include the power to decree alimony as an incident of divorce; nor is there any jurisdiction to grant alimony to a wife as a provision to be made by her husband for her maintenance unconnected with proceedings for divorce. The American courts have generally conformed to this view, and have denied* the existence of any jurisdiction to award alimony as a provision for the maintenance of a wife by her husband. In several states, however, such a power has been asserted and exercised as belonging to the general jurisdiction of equity.” He then refers to a number of the cases cited by Mr. Page, and some others, but in a note the learned author expresses disagreement with their conclusions. In Parsons v. Parsons, 9 N. H., 309, the Chief Justice remarks that “we have not a general jurisdiction to compel husbands to deal justly and kindly with their wives.” So in Michigan, in Peltier v. Peltier, Har. Ch., 19, the court refused, as a court of chancery, to entertain the bill of the wife for alimony, on the ground that courts of chancery, as such, have no jurisdiction of such cases.
It may be fairly claimed from the foregoing that the courts of Ohio have not general equity jurisdiction in suits for alimony, but that the jurisdiction is such, and such only, as is given by the statute. We *348 do not forget that there are occasional remarks in-some of the earlier opinions which, at a hasty glance, might seem to contradict this proposition, as in Mattox v. Mattox, 2 Ohio, 234, where a party applied for a divorce on the ground of adultery while herself living in adultery, and the court in refusing the decree, speaks of the application as being to the equity jurisdiction of the court, and adds that the complainant must come with clean hands, etc. Certainly a proper construction of the statute required this holding. It was impossible to construe the statute as offering a bounty to guilt. In another case, reported in Wright’s Report, the court is quoted as speaking of the petition “as in chancery.” This expression is fully satisfied by the consideration that, as in chancery, the petition was, under the old practice addressed to the court, and was not required to be sworn to; the cause was then, as it is now, tried by the court. There was then no appeal because the cause was tried in the highest court of the state for trials of fact. This was by force of the first general statute on the subject, enacted December 29,1804 (3 O. L., 177), which gave sole cognizance in such cases to the supreme court, and made specific provision for awarding alimony to the wife and full restoration to her of her lands and tenements where divorce was granted for the aggression of the husband, and, where granted for the aggression of tin wife, such part thereof, and such share of the husband’s personal property as to the court may appear reasonable. Earlier than this, in 1795, the governor and judges at Cincinnati passed a law respecting divorce, which was repealed by the act above cited* •Now that the common pleas has jurisdiction, the right of appeal as to alimony is provided for. These features are “as in chancery,” but it does not follow that *349 the court, in dealing with the subject, exercises full ■equity powers. The terna “as in chancery” itself implies that the case is not strictly a chancery proceeding. Lane, J., speaking for the court in Bascom v. Bascom 7 Ohio, 465, and referring to the statute, holds: “Under this law it is claimed that all the incidents of a suit in chancery attach to these proceedings, and among others the right of review. It ■seems plain to us that such could not have been the intention of the legislature.” And the learned judge then proceeds to point out obvious and important distinctions. It may be of interest to the general reader to note, in passing, that in the early history of the .state and general assembly itself exercised the power to grant divorces, one instance being, found in volume 2, O. L., 67, where Hannah Willis wns granted a ■divorce from Isaac. Doubtless many others will be found in subsequent volumes. This pernicious practice was continued at intervals until 1848, when this ■court, by the decision in Bingham v. Miller, 17 Ohio, 445, set its seal of condemnation upon it, which, was followed by a provision in the constitution of 1851, art. 2, sec. 32, absolutely prohibiting it. It is to be remarked as an instance of the confusion pervading the legislative mind respecting the division of the powers of government, that, having by the first act passed by that body on the subject, conferred upon the supreme court sole cognizance of granting divorces, and given to that court like exclusive jurisdiction by subsequent acts, the general assembly should itself continue to assume jurisdiction of the subject, and from time to time divorce mismated couples.
That the early law-makers did not understand that ■our courts had, irrespective of statutory authority, full equity powers respecting the reciprocal rights of *350 husbands and wives is. shown by the enactment of March 2, 1846 (44 O. L., 115), which provides for the filing by any married woman, by her next friend, of a bill in chancery to enjoin her husband from squandering her estate, and gives the court power to appoint a receiver, etc. This was wholly superfluous legislation if the subject was already within the equity power of the chancery court.
Having, we think, satisfactorily shown that the court in allowing alimony does not exercise general equity powers, but is controlled by the statute, and is authorized to exercise such power as that expressly gives, and such as is necessary to make effective its orders and decrees thus made, such an injunction to maintain the statuo quo and prevent action by the defendant which may tend to render nugatory a decree favoring the plaintiff, we turn to the statute to ascertain just what it does prescribe. Section 5699 provides that: “When a divorce is granted by reason of the aggression of the husband, the wife shall, by force of the judgment of divorce, be restored to all her lands, tenements and hereditaments not previously disposed of and the husband shall be barred of all right of doAver therein.” * * * “She shall be alloAved such alimony out of her husband’s real and personal property as the court deems reasonable, having due regard to the property Avhich came to him by marriage, and the value of his real and personal estate at the time of the divorce, which alimony may be alloAved to her in real or personal property, or both, or by decreeing to her such sum of money payable either in gross or installments, as the court deems just and equitable; and if the wife survives her husband, she shall also be entitled to her right of dower in the real estate of her husband not alloAved to her as alimony, *351 of which he was seized at any time during the coverture, and to which she had not relinquished the right of dower.” It is to be noted that here are certain important mandatory provisions. She shall be restored to all her lands. This does not in terms include personal effects or choses in action, but such is, without doubt, the spirit of it. She shall be allowed alimony out of her husband’s real and personal property, and, if she survives her husband, she shall be entitled to her right of dower in his real estate not allowed as alimony and to which she has not released her right. While the court is granted much latitude as to the amount of alimony to be allowed, it may not disregard these mandatory provisions; and while, also, the court may make conditions respecting the time and manner of payment of the alimony allowed, it may not attach such conditions to the allowance as will nullify any of these positive requirements of the statute, or neutralize the allowance actually made. Giving effect to the foregoing provisions, the conclusion follows that the circuit court was without authority to require that the plaintiff quitclaim to the defendant her interest in the eighty acres of land, or in any of defendant’s lands, and equally without power to require her to surrender to him the notes which she held against him.
Counsel for defendant in error confidently urge their personal belief that there is power in the court, in malting; a money allowance for alimony, to dispose of the wife’s contingent dower in her husband’s lands and to make any order respecting the transfer of any property that may to the court seem just, and that they never have before heard it questioned. The counsel are lawyers of wide experience, and of course it is possible that their understanding may be in ac *352 cord with the practice heretofore prevailing in some jurisdictions. We do not think, however, that it has been general, nor do we know of a reported case of any court in this state which holds that doctrine. On the other hand there is reported in 7 Re., 646, 4 W. L. R, 645, the case of Foote v. Worthington, decided by the district court of Cuyahoga county, opinion by Hale, J., in which, with convincing reasoning in its support, it is held that: “Under the law as it was in 1856 (section 5699, Revised Statutes, is the same), on a divorce being granted for the aggression of the husband, and a certain Ipt awarded as alimony, a further order that the wife be barred of dower in any other property of the husband, and enjoined from instituting proceedings to obtain it, is wholly void, and if she survive her husband she can obtain dower in any property of his, though sold by him before his death.”
But it is thought by some that an amendment to this section enacted May 19,1894 (91 O. L., 348), may have the effect to authorize the decree of the circuit court. That amendment is: “but in any case, when it appears to the court that the husband is the owner of but little or no property or means, and the wife is the owner of lands or personal estate, or both, the court may adjudge to the husband such share of the wife’s real or personal property, or both, or may decree to him such sum of money out of her estate, payable in gross or in installments, as the court deems just and reasonable, having due regard to all the circumstances of the parties.” It may be that, at first blush, this construction might seem to be justified, but we think the claim will not stand examination. The statute, it will be borne in mind, must be construed as a whole. The language of the amendment is permissive, and the' relief thereby permitted is made to de *353 pend upon a certain state of facts appearing. The amendment conld not, in any event, we think, without doing violence to all accepted rules of construction, be construed, by force of its own language alone, as annulling the previous positive requirements of the section. They forbid what the court in this case undertook to do. We do not hold that the trial court may not, in fixing the amount of alimony, acquaint itself with the wife’s pecuniary condition, but we do hold that the court may not abrogate the statute. It seems clear that no such case is made in the record as this amendment provides for. It is true that there is no special finding of facts, nor any bill of exceptions. But the plaintiff’s case is made in her petition and amended petition, and to these pleadings there is no answer at all unless the original answer should be regarded as before the court, and if it is, the legal effect is only to deny all charges of wrong-doing on the part of the defendant, and to admit the other allegations. The plaintiff’s case thus made negatives the conditions of the amendment hereinbefore referred to on which only the court is permitted to adjudge to the husband the property of the wife. In this state of the record it is reasonable to hold, as we do hold, especially in view of the guarded language of the amendment, that it has no application to the present case. The amendment, if taken unqualifiedly, is contradictory to the earlier part of the section, and if the defendant desired to avail himself of its provisions, he should have made a case justifying its application. The purpose of the amendment probably is to place the erring husband in a position respecting property akin to that given an erring wife by the succeeding section, but the language is less general and noticeably more guarded.
*354 It follows from the foregoing that the court was. without authority to impose the conditions prescribed in respect to release by the plaintiff of her interest in her own lands and of dower in defendant’s lands, and the surrender of notes held by her against the defendant, and that the decree rendered is in those respects erroneous. The judgment of the circuit court will, therefore, be reversed and the cause remanded to that court for further proceedings according to law.

Reversed.,

Burket, C. J., Davis and Crew, JJ., concur.
Price, J., not sitting.